IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATHANIEL HILLARD,
a/k/a "Boo Boo,"

    *Petitioner*,

v.

UNITED STATES OF AMERICA,

    *Respondent*.

Criminal No. ELH-17-0191
Related Civil No. ELH-19-2326

## MEMORANDUM OPINION[1]

Nathaniel Hillard,[2] the self-represented Petitioner, has filed a motion under 28 U.S.C. § 2255 (ECF 221, the "Petition"), seeking to vacate, set aside, or correct his sentence.[3] The government opposes the Petition. ECF 241. Although Petitioner has since corresponded with the Court (ECF 243; ECF 254), he has not replied to the opposition.

No hearing is necessary to resolve the Petition. For the reasons that follow, I shall deny the Petition.

---

[1] The Memorandum Opinions amends, revises, supersedes, and replaces the Memorandum Opinion docketed on March 23, 2020, at ECF 256. The revisions herein merely amplify facts relating to the sentencing guidelines and sentencing. The Order remains unchanged.

[2] The defendant's last name is sometimes spelled as "Hilliard" throughout the record. I have used the spelling that appears in the Indictment.

[3] Hillard was sentenced on May 21, 2018, and did not appeal, pursuant to the waiver of appellate rights in his Plea Agreement. The Petition was not filed until August 12, 2019. Hillard claims that he was unable to timely file his Petition "[d]ue to frequent institutional lock downs . . . ." ECF 221 at 10. His contention is supported by exhibits. *See* ECF 221 at 20, 21. The government does not seek dismissal under 28 U.S.C. § 2255(f). Therefore, I have not addressed the issue of timeliness.

## I. Factual and Procedural Background

Hillard and three others were charged in a Superseding Indictment on July 11, 2017. ECF 63. Of relevance here, Hillard was charged in Count One with conspiracy to distribute and possess with the intent to distribute heroin, in violation of 21 U.S.C. § 846, and he was charged in Count Five with discharging a firearm resulting in death, during and in relation to a drug trafficking crime, in violation of 18 U.S.C. §§ 924(c), (j). The § 846 conspiracy offense served as the predicate crime for the § 924(c) offense. *See* ECF 63.[4]

Count One carried a mandatory minimum term of imprisonment of ten years, with a maximum of life imprisonment. *See* 21 U.S.C. §§ 846, 841(b)(1)(A). Count Five carried a mandatory minimum term of imprisonment of ten years, with a maximum of life, consecutive to Count One. *See* 18 U.S.C. §§ 924(c) and 924(j)(1).[5]

Among other things, on March 17, 2017, investigators intercepted a call between Hillard and a co-conspirator, capturing in real time the murder of Donya Rigby, who sometimes acted as a "lookout" for the drug trafficking organization ("DTO"). Apparently, his performance was regarded as unsatisfactory, and he displeased members of the DTO. ECF 119 at 4-5. In the intercepted call, Hillard was heard alerting a co-conspirator to Rigby's presence, and he provided instruction as to the murder itself. *Id.* at 5.

On January 16, 2018, Hillard entered a plea of guilty to both charges, pursuant to a Plea Agreement. *See* ECF 118; ECF 119 (Plea Agreement). In the Plea Agreement, the parties agreed that Hillard qualified as a career offender for the purpose of the drug conspiracy. They also agreed that he participated in a murder during the drug offense. ECF 119, ¶¶ 6(a), (b)(i). Therefore, the

---

[4] In view of the gravity of the charges, Hillard had two court-appointed attorneys.

[5] The government did not seek the death penalty.

parties recognized that the murder cross-reference would ultimately decide Hillard's base offense level. Paragraph 6(b)(ii) of the Plea Agreement (ECF 119) stated:

> Further, the parties stipulate and agree that because the defendant knowingly participated in a first-degree murder in furtherance of the drug trafficking conspiracy, the defendant's base offense level for the drug trafficking conspiracy is 43, pursuant to U.S.S.G. § 2D1.1(d)(1) and U.S.S.G. § 2A1.1.

Under the Plea Agreement, the government agreed to recommend a "reasonable sentence," based on 18 U.S.C. § 3553(a) and the United States Sentencing Guidelines. ECF 119, ¶ 9.

The Presentence Report (ECF 143, "PSR") calculated Hillard's advisory sentencing guidelines range ("Guidelines" or "U.S.S.G."), consistent with the Plea Agreement. The PSR concluded that Hillard was a Career Offender based on two prior Maryland convictions for armed robbery. *See* ECF 143, ¶¶ 20, 27, 31. However, the PSR also determined that the murder cross-reference controlled the offense level for Count One, because it resulted in a higher base offense level. *See id.* ¶¶ 14, 20; *see also* U.S.S.G. § 4B1.1(a). Thus, as contemplated in the Plea Agreement, Hillard had a base offense level of 43 for Count One. *Id.* ¶ 14. After deductions for acceptance of responsibility under U.S.S.G. § 3E1.1(a), (b), Hillard had a final offense level of 40 for Count One. *Id.* ¶¶ 21, 22, 23.

As to Count Five, the offense of discharging a firearm during a drug trafficking crime, resulting in the death of Donya Rigby, the Guidelines sentence corresponded to the congressionally mandated minimum term of imprisonment of ten years, consecutive. *See* ECF 143, ¶ 24; U.S.S.G. § 2K2.4(b); *see also* 18 U.S.C. § 924(c).

Because Hillard was a career offender, he had a Criminal History category of VI. *Id.* ¶ 35; *see also id.* ¶¶ 27, 31. Even if Hillard were not a career offender, however, he fell into a Criminal History category of VI, because he had 13 criminal history points. *Id.* ¶ 34.[6]

Sentencing was held on May 21, 2018. ECF 157. At sentencing, the government played a portion of the intercepted telephone communication that captured the murder of Donya Rigby. ECF 230 at 19-22. The Court reiterated that the murder cross-reference—not Hillard's Career Offender status—determined his base offense level. The Court said, ECF 230 at 6:

> Under the plea agreement, the offense level was increased to 37 because the defendant qualified as a career offender under [U.S.S.G. §] 4B1.1(b)(1). The parties also stipulated in the plea agreement that because the defendant knowingly participated in a first-degree murder in furtherance of the drug trafficking conspiracy, the offense level increases to 43 under [U.S.S.G. §] 2D1.1(d)(1) and 2A1.1.

Further, the Court observed that Hillard's Criminal History category was the same, with or without Career Offender status. It said, *id.* at 11-12:

> When you add up the points, they result in a criminal history subscore of 11 points. The defendant committed this offense while under . . . a criminal justice sentence for the armed robbery in the case that is referenced in Paragraph 31 [of the PSR]. So two more points are added under 4A1.1(d). That adds up to 13 criminal history points. That adds up to a criminal history category of VI, which is the worst that you can have. And that's without being a career offender. Even if he is a career offender, as I believe he is, it's a VI. So either way, it doesn't change. His criminal history category is VI.

Hillard's counsel agreed that his two prior armed robberies qualified as predicate offenses for purposes of the Career Offender designation. *Id.* at 11. And, his lawyer added, *id.*: "I would just note in passing that even if Mr. Hillard was not a career offender, the guidelines wouldn't change."

---

[6] The underlying case was Hillard's second federal offense. In 2004, he was convicted of possession of a firearm by a convicted felon in Case WDQ-04-035. Judge William D. Quarles, Jr. sentenced him to a term of 57 months' imprisonment.

4

Based on a total offense level of 40 and a Criminal History category of VI, the Guidelines for Count One called for a period of incarceration of 360 months to life imprisonment. And, the Guidelines for Count Five corresponded to the mandatory minimum sentence of 120 months' incarceration, consecutive to the term imposed for Count One. Thus, the combined advisory Sentencing Guidelines range was 480 months to life. ECF 230 at 13. The government sought a sentence of 420 months. ECF 230 at 27.

As to Count One, the Court sentenced Hillard to a below Guidelines sentence of 300 months. For Count Five, the Court imposed the mandatory, consecutive term of 120 months. This resulted in a total term of imprisonment of 420 months. *See* ECF 158 (Judgment). Hillard did not appeal. Instead, he filed this Petition.

## II. Discussion

### A.

Section 2255(a) of Title 28 of the United States Code provides relief to a prisoner in federal custody only on specific grounds: that the sentence was imposed in violation of the Constitution or laws of the United States; that the court was without jurisdiction to impose such a sentence; that the sentence was in excess of the maximum authorized by law; or that the sentence is otherwise subject to collateral attack. *See Hill v. United States*, 368 U.S. 424, 426-27 (1962) (citing 28 U.S.C. § 2255); *United States v. Hodge*, 902 F.3d 420, 426 (4th Cir. 2018); *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018); *United States v. Newbold*, 791 F.3d 455, 459 (4th Cir. 2015); *United States v. Pettiford*, 612 F.3d 270, 277 (4th Cir. 2010).

Pursuant to 28 U.S.C. § 2255(b), the court must hold a hearing "[u]nless the motion and the files and records conclusively show that the prisoner is entitled to no relief. . . ." *See, e.g., United States v. White*, 366 F.3d 291, 302 (4th Cir. 2004). Courts have determined that a hearing

is not necessary where "the motion . . . fail[s] to allege sufficient facts or circumstances upon which the elements of constitutionally deficient performance might properly be found [or] where the defendant has failed to present any affidavits or other evidentiary support for the naked assertions contained in his motion." *United States v. Taylor*, 139 F.3d 924, 933 (D.C. Cir. 1998) (internal quotation marks and citation omitted); *accord United States v. McGill*, 11 F.3d 223, 225-26 (1st Cir. 1993). On the other hand, a hearing is generally "required when a movant presents a colorable Sixth Amendment claim showing disputed material facts and a credibility determination is necessary to resolve this issue." *United States v. Robertson*, 219 Fed. App'x 286, 286 (4th Cir. 2007); *see United States v. Ray*, 547 Fed. App'x 343, 345 (4th Cir. 2013).

In reviewing the Petition, the Court is mindful that a self-represented litigant is generally "held to a 'less stringent standard' than is a lawyer, and the Court must liberally construe his claims, no matter how 'inartfully' pled." *Morrison v. United States*, RDB-12-3607, 2014 WL 979201, at *2 (D. Md. Mar. 12, 2014) (internal citations omitted); *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (stating that claims of self-represented litigants are held "to less stringent standards than formal pleadings drafted by lawyers"); *Bala v. Commonwealth of Virginia Dep't of Conservation & Recreation*, 532 F. App'x 332, 334 (4th Cir. 2013) (same). Notwithstanding this standard, I am satisfied that no hearing is necessary to resolve the Petition.

**B.**

Under § 2255, the Petitioner must establish (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law so fundamental as to render the entire proceeding invalid. *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003). And, "an error of law does not provide a basis for collateral attack unless the claimed error

constituted 'a fundamental defect which inherently results in a complete miscarriage of justice.'" *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quoting *Hill*, 368 U.S. at 428).

The scope of collateral attack under § 2255 is narrower than on appeal, and a "'collateral challenge may not do service for an appeal.'" *Foster v. Chatman*, ___ U.S. ___, 136 S. Ct. 1737, 1758 (2016) (quoting *United States v. Frady*, 456 U.S. 152, 165 (1982)). A failure to raise a claim on direct appeal constitutes a procedural default that bars presentation of the claim in a § 2255 motion, unless the petitioner can demonstrate "cause and actual prejudice resulting from the errors of which he complains," or "actual innocence." *Pettiford*, 612 F.3d at 280 (citing *United States v. Mikalajunas*, 186 F.3d 490, 492-93 (4th Cir. 1999)); *see Bousley v. United States*, 523 U.S. 614, 621 (1998) ("Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal.") (internal quotations and citations omitted); *Murray v. Carrier*, 477 U.S. 478, 485 (1986); *see also Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Reed v. Farley*, 512 U.S. 339, 354 (1994) ("the writ is available only if the petitioner establishes 'cause' for the waiver and shows 'actual prejudice resulting from the alleged violation.'"); *Finch v. McKoy*, 914 F.3d 292, 298 (4th Cir. 2019) (discussing requirements for a claim of actual innocence); *United States v. Linder*, 552 F.3d 391 (4th Cir. 2009).

Under the "cause and prejudice" standard, the petitioner must show: (1) cause for not raising the claim of error on direct appeal; and (2) actual prejudice from the alleged error. *Bousley*, 523 U.S. at 622; *see also Dretke*, 541 U.S. at 393; *Reed*, 512 U.S. at 354; *Frady*, 456 U.S. at 167-68.

In order to show cause for failure to raise a claim of error on direct appeal, a petitioner must prove that "some objective factor external to the defense such as the novelty of the claim or a denial of effective assistance of counsel" impeded the efforts to raise the issue earlier. *Coleman*

7

*v. Thompson*, 501 U.S. 722, 753 (1991); *see also Carrier*, 477 U.S. at 492 ("[C]ause . . . requires a showing of some external impediment preventing counsel from constructing or raising the claim."); *Mikalajunas*, 186 F.3d at 493 (movant must demonstrate "something external to the defense, such as the novelty of the claim or a denial of effect assistance of counsel"). Additionally, the alleged error cannot simply create "a *possibility* of prejudice," but must be proven to work to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original).

The actual innocence exception "only applies in limited circumstances." *United States v. Jones*, 758 F.3d 579, 583 (4th Cir. 2014). The Fourth Circuit has said, in the context of a habeas case under 28 U.S.C. § 2254:[7] "A valid actual innocence claim 'requires petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.'" *Finch*, 914 F.3d at 298 (quoting *Schlup v. Delo*, 513 U.S. 298, 325 (1995)). Moreover, a petitioner must "'demonstrate that the totality of the evidence would prevent any reasonable juror from finding him guilty beyond a reasonable doubt, such that his incarceration is a miscarriage of justice.'" *Finch*, 914 F.3d at 298 (quoting *Teleguz v. Pearson*, 689 F.3d 322, 329 (4th Cir. 2012)). It is an "exacting standard," based on a "'holistic judgment about all the evidence'. . . ." *Finch*, 914 F.3d at 299 (quoting *House v. Bell*, 547 U.S. 518, 539 (2006)).

In order to show "actual innocence," then, the petitioner "must demonstrate actual factual innocence of the offense of conviction, *i.e.*, that petitioner did not commit the crime of which he was convicted; this standard is not satisfied by a showing that a petitioner is legally, but not

---

[7] "[T]he grounds for relief under § 2255 are equivalent to those encompassed by § 2254 [and] § 2255 was intended to mirror § 2254 in operative effect." *Davis v. United States*, 417 U.S. 333, 344 (1974).

factually, innocent." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)); *see also Bousley*, 523 U.S. at 623. Moreover, the petitioner must meet his burden by clear and convincing evidence. *Mikalajunas*, 186 F.3d at 494. In other words, a "petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence." *Jones*, 758 F.3d at 583 (emphasis added); *see Bousley*, 523 U.S. at 623.

There is no procedural default as to claims concerning ineffective assistance of counsel. Such claims ordinarily are not litigated on direct appeal. Rather, claims of ineffective assistance are cognizable on direct appeal "only where the record conclusively establishes ineffective assistance." *United States v. Baptiste*, 596 F.3d 214, 216 n.1 (4th Cir. 2010); *see also United States v. Ladson*, 793 Fed. App'x 202 (4th Cir. Feb. 12, 2020) (per curiam). Instead, such claims are litigated in a § 2255 action, to allow for development of the record. *Massaro v. United States*, 538 U.S. 500, 504-06 (2003); *Ladson*, 793 Fed. App'x 202.

## C.

Hillard asserts two grounds for relief. First, Hillard contends that predicate offense of conspiracy to distribute heroin does not qualify as a "serious drug offense" for the purpose of his conviction under 18 U.S.C. § 924(c). ECF 221 at 4, 13. Second, Hillard argues, under Amendment 798 to the Guidelines, that his Maryland armed robbery convictions no longer qualify as predicate offenses for the career offender designation.

Hillard did not raise either issue on appeal. Therefore, the government contends that "his challenge is barred by procedural default." ECF 241 at 4.

As noted, a § 2255 motion is not a substitute for a direct appeal. *See Linder*, 552 F.3d at 397. Claims of error that could have been raised before the trial court or on direct appeal, but were not, are procedurally barred unless the petitioner shows both cause for the default and actual

9

prejudice, or the petitioner demonstrates he is actually innocent of the offense. *See Bousley*, 523 U.S. at 621–22; *Frady*, 456 U.S. at 167.

### 1. Drug Conspiracy Under 21 U.S.C. § 846

Hillard claims that a drug conspiracy offense under 21 U.S.C. § 846 will no longer qualify as a drug trafficking crime if the Supreme court rules favorably in *United States v. Shular*, 139 S. Ct. 2773 (2019) (granting certiorari), thus invalidating his conviction under 18 U.S.C. § 924(c). ECF 24 at 13-15. According to Hillard, if *Shular* disqualifies the state drug offense at issue in that case, then this Court must vacate his § 924(c) conviction here, similar to *United States v. Ledbetter*, 929 F.3d 338, 360-61 (6th Cir. 2019), invalidating a § 924(c) conviction based on a "crime of violence" after the Supreme Court decided *United States v. Davis*, ___ U.S. ___, 139 S. Ct. 2319, 2323-24 (2019). *See* ECF 221 at 14. Further, Hillard asks this Court to hold this claim in abeyance, pending resolution of *Shuler*. ECF 221 at 15. But, for the reasons discussed, there is no need to do so.

Although *Shular* arose after Hillard's sentencing, a decision in that case will have no impact on his sentence, regardless of the outcome. To prevail here, Hillard must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage." *See Frady*, 456 U.S. at 170. If the Court is "confident" that Hillard "suffered no actual prejudice of a degree sufficient to justify collateral relief," then the claim has been procedurally defaulted. *Id.* at 168. *See also Pettiford*, 612 F.3d at 280 n.9 ("The exception requires a showing of both cause and prejudice.").

*Shular* concerns the issue of whether a state drug conviction qualifies as a "serious drug offense" under the Armed Career Criminal Act ("ACCA"), necessary to trigger enhanced penalties

for violations of 18 U.S.C. § 922(g)(1). *See United States v. Shular,* 736 F. App'x 876, 877 (11th Cir. 2018) (per curiam). But, Hillard was convicted under § 924(c), not § 922(g)(1).

Moreover, *Shular* involved a state offense. In contrast, Hillard's federal offense under 21 U.S.C. § 846 was expressly included as the predicate offense for the charge under 18 U.S.C. § 924(c). Section 924(c) provides an enhanced sentence for "any person who during and in relation to any crime of violence or *drug trafficking crime* … for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." 18 U.S.C. § 924(c)(1)(A) (emphasis added). Further, it defines the term "drug trafficking crime" as including "any felony punishable under the Controlled Substances Act," and this would necessarily include conspiracy under 21 U.S.C. § 846. *Id.* § 924(c)(2).

In sum, *Shular* concerns an entirely different statute. The pertinent statute here specifically includes § 846 drug conspiracies. Therefore, Hillard's § 924(c) conviction would not be affected by any ruling in *Shular*. It follows that Hillard cannot show actual prejudice.

### 2. Career Offender Status

In his second claim, Hillard contends that the residual clause under U.S.S.G. § 4B1.2 can no longer serve as a basis to designate him as a career offender. Hillard does not attempt to explain why that claim was not raised at his sentencing on May 21, 2018, or on direct appeal.

Notably, in June 2015, the Supreme court decided *Johnson v. Untied States*, ___ U.S. ___, 135 S. Ct. 2551 (2015), declaring the ACCA's residual clause unconstitutionally vague. That was almost three years prior to Hiillard's sentencing. But, the case of *United States v. Bell*, 901 F.3d 455 (4th Cir. 2018), was pending at the time of Hillard's sentencing. It was argued on March 22, 2018, and it concerned whether Maryland armed robbery is a "violent felony" under the force

clause of the Armed Career Criminal Act ("ACCA").  Accordingly, Hillard could have raised at sentencing the challenge that he advances here.

In any event, Hillard cannot show prejudice.  The *Bell* Court's decision was issued August 28, 2018.  The Court concluded, *inter alia*, that a Maryland conviction for robbery with a deadly weapon is a violent felony under the force clause for the purpose of 18 U.S.C. § 924(c).  *See Bell*, 901 F.3d at 470-71.

The Career Offender Guidelines apply if the defendant has at least two prior felony convictions for either a crime of violence or a controlled substance offense.  U.S.S.G. § 4B1.1(a).  Through 2015, the Guidelines defined "crime of violence" as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or
>
> (2) is burglary of a dwelling, arson, or extortion, involves use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another.*

U.S.S.G. § 4B1.2(a) (2015) (emphasis added).  Subsection (a)(1) contained the "force clause," and the first part of subsection (a)(2) contained the "elements clause."  The last part of subsection (a)(2), italicized above, contained what was known as the "residual clause."

In 2015, the Supreme court declared the ACCA's residual clause unconstitutionally vague.  *See Johnson*, 135 S. Ct. at 2563.  Because § 4B1.2's residual clause was identical, the Guidelines followed suit and removed it.  Since *Johnson*, the Guidelines have defined "crime of violence" without a residual clause—as "any offense under federal or state law, punishable by imprisonment for a term exceeding one year," that

> (1) has as an element the use, attempted use, or threatened use of physical force against the person of another, or

> (2) is murder, voluntary manslaughter, kidnapping, aggravated assault, a forcible sex offense, robbery, arson, extortion, or the use of unlawful possession of a firearm described in 26 U.S.C. § 5845(a) or explosive material as defined in 18 U.S.C. § 841(c).

U.S.S.G. § 4B1.2(a) (2016).

The change, made in Amendment 798, limited § 4B1.2 to its force and enumerated clauses. It became effective in August 2016, two years before Hillard's sentencing. *Id.* As the government aptly puts it, Hillard "could not have suffered actual prejudice from a clause that did not exist." ECF 241 at 8.

Moreover, although Hillard qualified as a career offender, that status did not affect his Guidelines. Rather, his offense level was determined by the murder cross-reference, not his career offender status. *See* PSR, ECF 143, ¶¶ 14, 20. And, Hillard's Career Offender status did nothing to change his criminal history, which was a Category VI, even without the Career Offender enhancement. *See id.* ¶¶ 34-35. Thus, Hillard cannot show actual prejudice, because his Career Offender status did not enhance his sentence in any way.

### 3. Actual Innocence

Because Hillard has not established cause and prejudice, he must establish actual innocence to avoid procedural default. This he cannot do. To show actual innocence, a petitioner must demonstrate that he "has been incarcerated for a crime he did not commit." *United States v. Jones*, 758 F.3d 579, 584 (4th Cir. 2014). Actual innocence is based on factual innocence and "is not satisfied by a showing that a petitioner is legally, but not factually, innocent." *See Mikalajunas*, 186 F.3d at 494. "In cases where the Government has forgone more serious charges in the course of plea bargaining, [a] petitioner's showing of actual innocence must also extend to those charges." *Bousley*, 523 U.S. at 624.

### III. Conclusion

Hillard has not provided any "cause" for his procedural default with respect to his Career Offender status. He failed to provide evidence of any "objective factor external to the defense" that impeded his counsel's opportunity to raise the issues, nor did he assert any claim as to ineffective assistance of his trial counsel. *See Carrier*, 477 U.S. at 488. This is not a case where Hillard can claim that the legal basis for his claim was not reasonably available to him during these proceedings. *See Bousley*, 523 U.S. at 622.

As to Hillard's claim under *Shular*, the outcome of the case would have no bearing on this case, for the reasons previously stated. Thus, there can be no prejudice.

In determining whether any "fundamental miscarriage of justice" would result if Hillard's claims were denied, I am mindful that he has failed to produce any "clear and convincing evidence" of his "factual innocence of the offense of the conviction." *Mikalajunas*, 186 F.3d at 494 (citing *Sawyer*, 505 U.S. at 339); *see also Bousley*, 523 U.S. at 623. Additionally, this Court notes that any "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently frivolous or false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal quotation marks omitted). "[A] district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." *Id.* at 222. In this case, the record contradicts any suggestion of "actual innocence." *See Sawyer*, 505 U.S. at 340.

For the foregoing reasons, I shall deny the Petition.

### IV. Certificate of Appealability

Pursuant to Rule 11(a) of the Rules Governing Proceedings under 28 U.S.C. § 2255, the court is required to issue or deny a certificate of appealability ("COA") when it enters a final order

14

adverse to the applicant. A COA is a "jurisdictional prerequisite" to an appeal from the court's earlier order. *United States v. Hadden*, 475 F.3d 652, 659 (4th Cir. 2007). In other words, unless a COA is issued, a petitioner may not appeal the court's decision in a § 2255 proceeding.[8] 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b).

A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see Buck v. Davis*, ___ U.S. ___, 137 S. Ct. 759, 773 (2017). Where the court denies a petitioner's motion on its merits, a petitioner satisfies this standard by demonstrating that reasonable jurists would find the court's assessment of the constitutional claims debatable or wrong. *See Tennard v. Dretke*, 542 U.S. 274, 282 (2004); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *see also Miller-El v. Cockrell*, 537 U.S. 322, 336-38 (2003).

Petitioner has not made a substantial showing of the denial of his constitutional rights. Therefore, I decline to issue a COA.

An Order follows.


Date: March 23, 2020 　　　　　　　　　/s/　　　　　　　　
　　　　　　　　　　　　　　　　　　　Ellen L. Hollander
　　　　　　　　　　　　　　　　　　　United States District Judge

---

[8] The denial of a COA by the district court does not preclude Petitioner from seeking a COA from the appellate court.